**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ELECTRIC BOAT CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | **CASE NUMBER: 15-cv-00461** |
| **UNITED STATES OF AMERICA,** | **Hon. William E. Smith** |
| **Defendant.** | |

**JOINT MOTION TO ENTER CONSENT DECREE AND FINAL JUDGMENT**

Plaintiff Electric Boat Corporation ("Plaintiff" or "Electric Boat") and Defendant the United States of America ("Defendant" or the "United States") (together, the "Parties") jointly move the Court to sign and enter as an order of the Court the attached proposed Consent Decree and Final Judgment.  In support of this motion, the Parties state as follows:

**BACKGROUND**

1.     This case involves claims for declaratory relief and the recovery of alleged response costs by Plaintiff under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601–75, with respect to the manufacturing facility and former naval air station at approximately 165 Dillabur Avenue, North Kingstown, RI 02852 (the "Quonset Point Site").

2.     Plaintiff filed its complaint on October 30, 2015.  (Dkt. #1).

3.     On January 18, 2016, Defendant answered Plaintiff's complaint and filed a counterclaim pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1).  (Dkt. #10).

4.     On February 8, 2016, Plaintiff answered Defendant's counterclaim.  (Dkt. #11).

1

5.      In 2016, the Parties commenced efforts to resolve through mediation the fundamental issues in this case, including (i) the equitable allocation of response costs between Plaintiff and Defendant under CERCLA, and (ii) the extent to which Plaintiff may seek to recover certain response costs through its government procurement contracts.  The Parties held in-person negotiations with a professional mediator on November 29 and December 9, 2016, and thereafter conferred separately with the mediator regarding various specific terms of a proposed settlement.  After the two in-person mediation sessions in late 2016, the Parties proceeded to negotiate the terms of a proposed consent decree that would resolve the matters at issue in this case.

### THE PROPOSED CONSENT DECREE AND FINAL JUDGMENT

6.      The Parties have agreed upon the proposed Consent Decree and Final Judgment ("Consent Decree"), attached hereto as Exhibit 1, to resolve the claims by Electric Boat against the United States and counterclaims by the United States against Electric Boat.  The proposed Consent Decree is the result of the Parties' successful efforts to fully and finally resolve claims relating to the Quonset Point Site in a manner consistent with CERCLA and the public interest.

7.      The Consent Decree provides that, without admitting any liability arising from occurrences or transactions pertaining to the Quonset Point Site, the United States shall bear 75 percent of Electric Boat's "Suspended Past Costs" under CERCLA at the Quonset Point Site, and 75 percent of Electric Boat's "Future Response Costs" under CERCLA at the Quonset Point Site—including an upfront payment of $5,840,000 by the United States toward Electric Boat's Future Response Costs for TCE source and soil removal costs pursuant to response action plans approved by the Rhode Island Department of Environmental Management.  *See* Exhibit 1, ¶¶ 6(a)–(d).

2

8.      Electric Boat agrees that it shall not seek or collect double recovery—*e.g.*, via reimbursement through its government procurement contracts or otherwise —of any payments made by the United States pursuant to this Consent Decree.  *See* Exhibit 1, ¶ 7(a).  However, Electric Boat is not prohibited from seeking reimbursement through its government procurement contracts for the portion of the response costs incurred by Electric Boat that are not paid by the United States pursuant to the Consent Decree.  *See* Exhibit 1, ¶¶ 7(a)–(b).

9.      Upon entry of the Consent Decree, all claims by Electric Boat against the United States and all counterclaims by the United States against Electric Boat shall be dismissed with prejudice.  *See* Exhibit 1, ¶ 13(c).

10.     Electric Boat further agrees to indemnify and hold harmless (but not defend) the United States against claims, liabilities, and costs attributable to Removal Actions or Remedial Actions at the Quonset Point Site.  *See* Exhibit 1, ¶ 10.

11.     Upon entry of the Consent Decree, the Parties forever covenant and agree not to sue each other regarding any Response Costs at the Quonset Point Site, except to enforce the terms of the Consent Decree.  *See* Exhibit 1, ¶ 8(a).  However, the United States reserves its right to assert against Electric Boat any claims or causes of action regarding the Quonset Point Site brought on behalf of the United States Environmental Protection Agency or a natural resource trustee.  *Id.*

12.     The Parties acknowledge and agree that the payments to be made by the United States pursuant to this Consent Decree represent a good faith compromise of disputed claims. Electric Boat and the United States further agree that this compromise represents a fair, reasonable, and equitable resolution of the claims in this case, and, therefore, the Court should find that the United States is entitled to protection from contribution claims by third parties in

accordance with Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability to persons not party to this case. *See* Exhibit 1, ¶ 9.

## STANDARD OF REVIEW

13.     Voluntary settlement of legal disputes is favored by the courts and is generally perceived to be in the public interest. *See Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983); *Envtl. Defense v. Leavitt*, 329 F. Supp. 2d 55, 69–70 (D.D.C. 2004). As relevant here, "it is the policy of [CERCLA] to encourage settlements," *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990), and there is "a presumption in favor of voluntary settlement." *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991); *see also In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1029 (D. Mass. 1989) (The "Congressional purpose [of protecting and preserving public health and the environment] is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation.").

14.     In reviewing a proposed CERCLA consent decree, the Court must determine that the decree is "fair, reasonable and adequate—in other words, 'consistent with the purposes that CERCLA is intended to serve.'" *Akzo Coatings*, 949 F.2d at 1435 (quoting H.R. Rep. No. 253, 99th Cong., 1st Sess., Pt. 3, at 19 (1985)); *Cannons Eng'g*, 899 F.2d at 85–86 (same); *Air Line Stewards and Stewardesses Ass'n, Local 550 v. TransWorld Airlines*, 630 F.2d 1164, 1167 (7th Cir. 1980) (settlements should be "fair, reasonable and adequate"). But the Court need not determine "whether the settlement is one which the court itself might have fashioned, or consider[ed] as ideal . . . ." *Cannons Eng'g*, 899 F.2d at 84. Nor is the Court's review of the proposed Consent Decree a *de novo* review of the evidence, *see Akzo Coatings*, 949 F.2d at

4

1424, as the Court need not "make a finding of fact as to whether the settlement figure is exactly proportionate to the share of liability appropriately attributed to the settling part[y]." *United States v. Cantrell*, 92 F. Supp. 2d 718, 723 (S.D. Ohio 2000).

## THE CONSENT DECREE IS FAIR, REASONABLE, ADEQUATE, AND IN THE PUBLIC INTEREST

15.     The proposed Consent Decree satisfies each of the requirements necessary for approval.  First, the proposed Consent Decree is *procedurally* fair, reasonable, and adequate because it was "negotiated at arm's length among experienced counsel," and that fact supports its approval.  *Cannons Eng'g*, 899 F. 2d at 87; *see also United States v. District of Columbia*, 933 F. Supp. 42, 48 (D.D.C. 1996) (fairness inquiry includes the "candor, openness, and bargaining balance" of the negotiating process) (internal citations omitted).

16.     The Parties engaged in detailed, substantive, and often challenging discussions with the assistance of an experienced mediator in negotiating the terms of the Consent Decree. This process also speaks to the *substantive* fairness, reasonableness, and adequacy of the settlement, as experienced and sophisticated counsel constructed a single framework for resolving all claims and issues in the case.  Finally, the Consent Decree is consistent with the statutory purposes of CERCLA because it avoids potentially lengthy and costly further litigation and thus allows resources to be put toward productive uses rather than litigation costs.  The Consent Decree thus is in the public interest.  *See, e.g., Akzo Coatings*, 949 F.2d at 1439.

17.     Accordingly, the Parties submit that the proposed Consent Decree is fair, reasonable, adequate, and in the public interest.

## CONCLUSION

For the reasons above, the Court should enter the attached proposed Consent Decree as an order of this Court.

Dated:  May 3, 2018                          Respectfully submitted,

                                             */s Gerald J. Petros*_____
                                             Gerald J. Petros (R.I. Bar No. 2931)
                                                gpetros@hinckleyallen.com
                                             HINCKLEY ALLEN
                                             100 Westminster Street, Suite 1500
                                             Providence, RI 02903
                                             (401) 274-2000

                                             Michael K. Murphy (Admitted *Pro Hac Vice*)
                                                mmurphy@gibsondunn.com
                                             Rachel Levick Corley (Admitted *Pro Hac Vice*)
                                                rcorley@gibsondunn.com
                                             GIBSON, DUNN & CRUTCHER LLP
                                             1050 Connecticut Ave., N.W.
                                             Washington, DC 20036

                                             ***Counsel for Plaintiff Electric Boat Corporation***


                                             */s/ Benjamin R. Carlisle*_____
                                             Joshua M. Levin
                                             Benjamin R. Carlisle
                                             U.S. Department of Justice
                                             Environment and Natural Resources Div.
                                             Environmental Defense Section
                                             P.O. Box 7611
                                             Washington, D.C. 20044
                                             joshua.levin@usdoj.gov
                                             benjamin.carlisle@usdoj.gov
                                             (202) 514-4198
                                             (202) 514-9771

                                             ***Counsel for Defendant United States of America***

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of May, 2018, a true and accurate copy of the foregoing Joint Motion to Enter Consent Decree and Final Judgment was filed using the Court's case management/ electronic case filing ("CM/ECF") system, which results in service on all counsel of record registered on the CM/ECF system.

/s/ __Benjamin R. Carlisle_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELECTRIC BOAT CORPORATION,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

CASE NUMBER: 15-cv-00461

Hon. William E. Smith

### CONSENT DECREE

This Consent Decree ("Consent Decree") is made, as of the Effective Date, between Plaintiff Electric Boat Corporation ("Electric Boat") and Defendant United States of America (the "United States"). Electric Boat and the United States collectively are referred to as the "Parties."

WHEREAS, this case involves claims by Plaintiff against the United States for recovery of response costs under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-75, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) ("CERCLA"), and counterclaims by the United States against Plaintiff;

WHEREAS, the United States has asserted, as a matter of law and equity, CERCLA prohibits Electric Boat from recovering environmental cleanup costs under both government contracts and CERCLA, and that Electric Boat would gain an inequitable economic benefit from those duplicative recoveries, a position that Electric Boat disputes (the "Double Recovery issue");

WHEREAS, the Parties desire to enter into this Consent Decree (1) to have a full and final resolution of any and all claims that were, could now be, or hereafter could be asserted by one Party against the other Party in connection with the Matters Addressed in this Consent Decree, except as expressly set forth in this Consent Decree; (2) to resolve Electric Boat's and the United States' dispute over the Double Recovery issue for purposes of the Parties' litigation concerning Electric Boat's recovery of response costs and reimbursement of costs associated with the Site; and (3) to avoid the complication and expense of further litigation of such claims among the Parties concerning the Matters Addressed in this Consent Decree;

WHEREAS, the Parties enter into this Consent Decree without an admission by any Party as to liability or any other issue of fact or law arising from the allegations of the Complaint, arising from the counterclaims filed by the United States against Electric Boat, and arising from any other allegation of claims raised by any Party in this case.

WHEREAS, the Parties agree and the Court finds, that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

1.      Jurisdiction and Venue.  This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 9607(a) and 9613(b).  Venue is proper pursuant to 42 U.S.C. § 9613(b).

2.      Application of this Consent Decree.  This Consent Decree applies to, is binding upon, and inures to the benefit of Electric Boat and the United States.  This Consent Decree does not extend to or inure to the benefit of any party, person, or entity other than Electric Boat and the United States, and nothing in this Consent Decree shall be construed to make any other person or entity not executing this Consent Decree a third-party beneficiary of this Consent

Decree.  Nothing in this Consent Decree shall constitute or be construed as a waiver or release

of, or covenant not to sue for, any claim or cause of action, in law or in equity, whether known or

unknown, which Electric Boat or the United States may have against any person or entity that is

not a Party to this Consent Decree.

3.      <u>Effective Date</u>.  The Effective Date shall be the date on which this Consent

Decree is approved by the Court.

4.      <u>Definitions</u>.  Unless expressly provided in this Paragraph 4, terms used in this

Consent Decree that are defined in CERCLA or its implementing regulations shall have the

meaning assigned to them in CERCLA or its implementing regulations.  Whenever the terms

listed below are used in this Consent Decree, the following definitions shall apply:

(a)      "Area 1 Response Action" shall mean the Response Action consisting of

full-scale in-situ chemical oxidation (ISCO) injections in the TCE Source Area as described in

Table 1 of the TCE Source Area Full Scale Remedial Action Work Plan ("TCE Source Area

RAWP") and TCE Source Area Full Scale Underground Injection Well Control ("UIC")

Application, dated December 2010, and the Addendum to the TCE Source Area RAWP and

TCE Source Area UIC, dated February 12, 2016, which have been approved by RIDEM.

(b)      "Area 2 Response Action" shall mean the future Response Action selected

by Electric Boat and approved by RIDEM for the TCE Plume Area as described in Table 1 of

the TCE Source Area RAWP, dated December 2010, including all costs related to the TCE

Plume following RIDEM's notice of completion of the Area 1 Response Action.

(c)      "Area 3 Response Action" shall mean the future Response Action selected

by Electric Boat and approved by RIDEM for the Vinyl Chloride Plume Area, as described in

the Vinyl Chloride Plume Area In-Situ Chemical Oxidation Pilot Study Work Plan, dated April 2016.

(d)    "Area 4 Response Action" shall mean the future Response Action selected by Electric Boat and approved by RIDEM for the Building 480 Non-Petroleum Volatile Organic Compounds in Light Non-Aqueous Phase Liquid, as described in the Remedial Action Work Plan for Bench-Scale and Pilot Study Activities, dated April 30, 2007.

(e)    "Area 5 Response Action" shall mean the future Response Action selected by Electric Boat and approved by RIDEM for the Building 480 Non-Petroleum Volatile Organic Compounds in Groundwater, as described in the Remedial Action Work Plan for Bench-Scale and Pilot Study Activities, dated April 30, 2007.

(f)    "Area 6 Response Action" shall mean the Response Action selected by Electric Boat and approved by RIDEM for those six discrete areas of soil within the Site described in the Area 6 – Soils Remedial Action Work Plan, dated September 26, 2016, as approved by RIDEM.

(g)    "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601–9675.

(h)    "Complaint" shall mean the Complaint filed by Electric Boat in this case.

(i)    "Contamination" shall mean any pollutant, contaminant, hazardous substance, solid waste, or hazardous waste, as those terms are defined under CERCLA, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k, or the Clean Water Act, 33 U.S.C. §§ 1251-1388.

(j)    "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday,

the period shall run until the close of business of the next day that is not a Saturday, Sunday, or Federal holiday.

(k)    "Double Recovery" shall mean: (i) any Third-Party Reimbursement; (ii) any compensation of any kind for Past Response Costs or Future Response Costs, including but not limited to, direct payments, Federal Contract payments, or credits, but which shall not include money being paid by the United States pursuant to this Consent Decree; and (iii) the compromise of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity for Past Response Costs or Future Response Costs, whether asserted against the United States or other persons or entities.

(l)    "Electric Boat" shall mean Electric Boat Corporation, the Plaintiff in this case, as well as Electric Boat's predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and all related entities.

(m)    "Federal Contracts" shall mean any past, existing, or future prime contracts, subcontracts, or any other agreements providing value between Electric Boat, on the one hand, and a department, agency, or instrumentality of the United States, on the other hand, including but not limited to contracts for goods or services, grants, and cooperative agreements, regardless of whether Electric Boat is a prime contractor or subcontractor.

(n)    "Fiscal Year" shall mean the period which lasts from October 1 in a particular year to September 30 the following year.

(o)    "Future Area 1 Response Costs" shall mean all Future Response Costs attributable to the Area 1 Response Action.

(p)    "Future Area 6 Response Costs" shall mean all Future Response Costs attributable to the Area 6 Response Action.

(q) "Future Response Costs" shall mean all Response Costs incurred by Electric Boat on or after August 1, 2017, including Other Future Response Costs.

(r) "Other Future Response Costs" shall mean all Future Response Costs, excluding all Future Area 1 Response Costs and Future Area 6 Response Costs.

(s) "Matters Addressed" shall mean Past Response Costs and Future Response Costs.

(t) "NCP" shall mean the National Contingency Plan, which is codified at 40 C.F.R. Part 300 and is referenced in Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

(u) "Party" shall mean Electric Boat or the United States, and "Parties" shall mean any Party or all of them together.

(v) "Past Response Costs" shall mean Response Costs incurred by Electric Boat prior to August 1, 2017, including Suspended Past Costs and Submitted Past Costs.

(w) "Payment Demand" shall mean a written demand to the United States for payment of the United States' Settled Share of Future Response Costs incurred by Electric Boat in accordance with the provisions of Article 6(d)(i)–(ii).

(x) "Plaintiff" shall mean Electric Boat.

(y) "Remedial Action" shall have the meaning set forth at 42 U.S.C. § 9601(24).

(z) "Removal Action" shall have the meaning set forth at 42 U.S.C. § 9601(23).

(aa) "Response Action" shall mean any Removal Action or Remedial Action performed by Electric Boat or its contractors at the Site.

(bb)   "Response Costs" shall mean (1) any "necessary costs of response incurred . . . consistent with the national contingency plan," within the meaning of CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), in performing a Response Action addressing Contamination at or from the Site; or (2) any "costs of removal or remedial action" that are "not inconsistent with the national contingency plan," within the meaning of CERCLA section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), that EPA or Rhode Island or an Indian tribe has or may incur performing or overseeing the performance of a Response Action pertaining to Contamination at or from the Site, that Electric Boat agrees to pay or for which it is held liable to reimburse EPA, Rhode Island, or an Indian tribe.

(cc)   "Rhode Island" shall mean the State of Rhode Island and Providence Plantations, including its agencies and departments, including but not limited to RIDEM.

(dd)   "RIDEM" shall mean the Rhode Island Department of Environmental Management, and any successor thereto.

(ee)   The "Quonset Point Facility" shall mean the areas of the former Quonset Point Naval Air Station and the former Quonset Point Naval Aircraft Rework Facility located in North Kingstown, Rhode Island, owned, leased, or operated by Electric Boat, as well as any areas where Contamination from there has come to be located.

(ff)   The "Site" shall mean the area of soil and groundwater contamination at issue in the Complaint and any areas to which such soil and groundwater contamination has come to be located, both within and outside of the boundaries of the Quonset Point Facility and including in particular Areas 1 through 6 as defined above.

(gg)   "Submitted Past Response Costs" shall mean all Response Costs previously included by Electric Boat as incurred costs under its Federal Contracts through February 28, 2011.

(hh)   "Superfund Interest Rate" shall mean the rate that is specified for interest on investments of the EPA Hazardous Substance Superfund established under subchapter A of Chapter 98 of Title 26 of the United States Code.

(ii)   "Suspended Past Costs" shall mean all Response Costs prior to August 1, 2017, that have been placed into a suspense account by Electric Boat and not submitted as incurred costs under its Federal Contracts.

(jj)   "Third-Party Reimbursement" shall mean any payment of, or consideration for, Past Response Costs or Future Response Costs that Electric Boat receives from any person or entity, including but not limited to, direct payments, insurance or contract recoveries, the discharge of any debt or obligation, or the satisfaction of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity.  Notwithstanding anything to the contrary contained herein, Third-Party Reimbursement shall not include (a) money being paid by the United States pursuant to this Consent Decree or (b) any amounts set aside by a Party or its predecessors to cover costs and expenses associated with or arising from Matters Addressed in this Consent Decree or from any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity related thereto.

(kk)   "United States" shall mean the United States of America and all of its departments, agencies, and instrumentalities.

(ll)   "United States' Settled Share" shall mean seventy-five percent (75%).

8

5.    Incurred Costs.  Electric Boat shall be deemed to have incurred costs as of the date on which payment was made by Electric Boat.

6.    Settlement Payments and Obligations.

(a)    The United States shall pay $3,574,846.50, representing the United States' Settled Share of the Suspended Past Costs, to Electric Boat in full and final settlement of all of Electric Boat's claims against the United States for recovery of Past Response Costs.  This payment shall be in the form of an Electronic Funds Transfer in accordance with instructions provided in Paragraph 6(k) and shall be made as soon as reasonably practicable after the Effective Date.  If the United States does not pay this amount in full within ninety (90) Days after the Effective Date, then interest at the Superfund Interest Rate shall begin accruing on the unpaid balance beginning on the 91st Day and continuing until the date of payment.

(b)    The United States shall pay $5,840,000 to Electric Boat as an initial payment for Future Area 1 Response Costs and Future Area 6 Response Costs (the "Initial Area 1 and Area 6 Payment").  This payment shall be in the form of an Electronic Funds Transfer in accordance with instructions provided in Paragraph 6(k) and shall be made as soon as reasonably practicable after the Effective Date.  If the United States does not pay this amount in full within ninety (90) Days after the Effective Date, then interest at the Superfund Interest Rate shall begin accruing on the unpaid balance on the 91st Day and shall continue until the date of payment.

(c)    In the event that the total amount of Future Area 1 Response Costs and Future Area 6 Response Costs exceeds $7,786,666.67 (the "Triggering Amount"), the United States shall make further payments of the United States' Settled Share of Future Area 1 Response Costs and Future Area 6 Response Costs in excess of the Triggering Amount

9

according to the procedures set forth in Paragraphs 6(d)-(k) for payment of Other Future Response Costs.  In the event that the total amount of Future Area 1 Response Costs and Future Area 6 Response Costs is less than $5,840,000, Electric Boat shall credit the amount by which $5,840,000 exceeds the total amount of Future Area 1 Response Costs and Future Area 6 Response Costs to the United States' payment obligations for any Other Future Response Costs.

      (d)     The United States shall reimburse Electric Boat for the United States' Settled Share of Other Future Response Costs in the following manner:

      (i)     Electric Boat shall make a Payment Demand to the United States within 90 Days after the end of each Fiscal Year.  Electric Boat's failure to include any cost in the Payment Demand for the Fiscal Year in which the cost was incurred shall not preclude Electric Boat from including that cost in a subsequent Payment Demand; provided, however, that no Payment Demand may include costs incurred more than two years prior to the end of the Fiscal Year covered in that Payment Demand.

      (ii)     Each Payment Demand shall include the following:

      (1)     Reference to the order(s), consent agreement(s), or directive(s), if any, issued by EPA, the State of Rhode Island, an Indian tribe, or such other regulatory authority as may have jurisdiction during the time period in which the costs were incurred, pursuant to which Electric Boat has incurred the Other Future Response Costs requested in the Payment Demand;

      (2)     Reference to the relevant remediation contract(s), purchase order(s), application(s) for expenditure, or other cost authorizing document(s);

(3)     An invoice showing the amount of payment requested fully divided into its detailed component cost items and related back to the relevant cost authorizing document(s);

(4)     Supporting documentation or information, such as copies of: invoices, descriptions of the work underlying the invoices, relevant reports submitted to RIDEM or other regulators, or other documents to support the recoverability of the claimed Other Future Response Costs.  Such supporting documentation or information shall identify each contractor, vendor, or other person to whom money for which Electric Boat seeks reimbursement was paid, and show, for each such contractor, vendor, or other person, the amount of money they were paid and the services or goods they provided;

(5)     Evidence that Electric Boat has actually incurred and paid each claimed cost; and

(6)     Certification by a corporate official of Electric Boat that the information provided in or with the Payment Demand is true and accurate to the best of Electric Boat's knowledge and that Electric Boat believes in good faith that it is entitled to recover the amount requested.

(iii)     A Payment Demand that does not comply with the requirements of Paragraph 6(d)(ii) may be rejected by the United States and returned to Electric Boat for proper completion, clarification, or documentation.  No time limits or other consequences associated with payment for and calculation of interest on the Payment Demand will begin to run until a complete and documented Payment Demand is submitted in conformance with Paragraph 6(d)(ii).  A Payment Demand that does not comply with the requirements of Paragraph 6(d)(ii) shall be deemed to be received by the United States on the Day it is complete and documented

11

pursuant to Paragraph 6(d)(ii).  If the parties have a dispute concerning whether a Payment

Demand complies with the requirements of Paragraph 6(d)(ii), either Party may invoke the

procedures in Paragraph 16.

        (iv)    It is expressly agreed by the United States and Electric Boat that

Electric Boat shall not demand payment under this Consent Decree, and the United States shall

not reimburse Electric Boat, for any of the following:

        (1)    Attorneys' fees, except as allowed under CERCLA for non-

government entities;

        (2)    Future Response Costs that fail to meet the requirements of

Paragraph 6(d)(ii); and

        (3)    Future Response Costs that have been, or will be, paid or

reimbursed by insurance or other form of recovery or subrogation from any insurance company,

any subrogee, or any other party, including another responsible party under CERCLA.

        (v)    Electric Boat's Payment Demands shall reference "Electric Boat v.

United States DJ # 90-11-6-20638" and shall be sent by overnight  delivery, with delivery costs

prepaid, to the address specified below, or such other address or by such other means as an

authorized representative of the United States specifies in writing:

        Chief, Environmental Defense Section
        Environment & Natural Resources Division
        United States Department of Justice
        601 "D" Street, N.W.
        Suite 8000
        Washington, D.C. 20004

        (e)    The United States shall pay the United States' Settled Share of Other

Future Response Costs identified in each Payment Demand, less any amount that the United

States disputes pursuant to Paragraph 6(f) or that is creditable to the United States under

Paragraph 6(c), as soon as reasonably practicable.  For any payment made later than one hundred and twenty (120) Days after the United States' receipt of a Payment Demand in conformance with the requirements of Paragraph 6(d)(ii), except a payment made after the Court or an alternative dispute resolution process has resolved a dispute under Paragraph 6(f), the United States shall pay interest at the Superfund Interest Rate, which interest shall begin to accrue on the 121st Day after the United States' receipt of the Payment Demand and shall continue to accrue until the date of payment.  Payments shall be made by Electronic Funds Transfer in accordance with instructions provided in Paragraph 6(k).

      (f)    <u>Withholding of Payment by the United States.</u>

      (i)    If the United States in good faith questions or contests any cost for which payment is requested, in whole or in part, it shall have the right to withhold payment of the amount of the disputed cost; provided, however, that the United States shall notify Electric Boat in writing of any such disputed amount within sixty (60) Days after the United States receives Electric Boat's Payment Demand or any supplement thereto.  Such notice shall contain a listing of the specific costs questioned by the United States and a detailed statement describing the basis for the United States' position.  Electric Boat and the United States shall promptly make a good faith effort to resolve such a dispute.  In the event that the United States and Electric Boat do not resolve the dispute within sixty (60) Days after the date of the United States' notice of dispute, either Electric Boat or the United States, or both, may thereafter seek relief from the Court in accordance with Paragraph 16, unless Electric Boat and the United States can agree to an alternative dispute resolution process.

      (ii)    If the United States questions any costs included in a Payment Demand because the information provided by Electric Boat with regard to those costs is

incomplete or not clear, Electric Boat may supplement its payment request by submitting additional information concerning those costs within sixty (60) Days after Electric Boat receives notice, pursuant to this subparagraph, that the United States has disputed such costs. An error or omission in the original submission, if corrected within sixty (60) Days after Electric Boat receives notice, shall not be the basis for the United States denying payment of an otherwise sufficiently documented cost. If Electric Boat supplements its original submission pursuant to this subparagraph, the United States shall be deemed to have received the Payment Demand on the Day that it receives the supplement. In the event that the United States and Electric Boat do not resolve a dispute concerning whether a Payment Demand is complete within sixty (60) Days after the date that Electric Boat supplements its original submission, either Electric Boat or the United States, or both, may thereafter seek relief from the Court in accordance with Paragraph 16, unless Electric Boat and the United States can agree to an alternative dispute resolution process.

(g)     In the event that either Electric Boat or the United States seeks relief from the Court to resolve a dispute under Paragraph 6(f), interest shall be awarded as follows:

(i)     If the Court wholly accepts Electric Boat's position regarding the amount of costs for which Electric Boat is owed reimbursement, the United States shall pay interest at the Superfund Interest Rate on the entire disputed amount, from the 121st Day after the United States' receipt of a Payment Demand in conformance with Paragraph 6(d)(ii) until the date payment is made;

(ii)     If the Court wholly accepts the United States' position regarding the amount of costs for which Electric Boat is owed reimbursement, the United States shall pay none of the disputed amount and no interest; and

14

(iii)    In all other cases, the Court may, in its discretion, award interest at the Superfund Interest Rate beginning no earlier than the 121st Day after the United States' receipt of the Payment Demand and continuing until no later than the date payment is made.

(h)    The United States' payment of Response Costs under this Paragraph 6 shall not constitute or be construed as the assumption of a role in the undertaking of any legal, contractual, or other responsibility for, or the approval of or concurrence in, any Response Actions that Electric Boat has taken, is now taking, or may take in the future.  The United States' payment of any sum pursuant to this Consent Decree, or a determination by the United States not to object to a Response Cost, shall not constitute an admission, agreement, understanding, or other indication by the United States that any such cost is a Response Cost within the scope of this Consent Decree, that such cost was necessary or incurred consistent with the NCP, or that such cost is otherwise reimbursable under this Consent Decree or under any statute, regulation, or other provision of law or equity, or any Federal Contract.

(i)    Upon the issuance of an Order of Approval by RIDEM for an Area 2 Response Action, an Area 3 Response Action, an Area 4 Response Action, and/or an Area 5 Response Action, the Parties agree to participate in negotiations for a period of not less than 60 Days for a final lump-sum payment by the United States for final settlement of Electric Boat's CERCLA claims against the United States for recovery of Response Costs with respect to the approved Response Action referenced in the Order of Approval ("Cash-Out Payment").  During the period of these negotiations, the United States shall continue to pay Electric Boat for Other Future Response Costs pursuant to the terms set forth in Paragraphs 6(d)–(g).  If the Parties do not reach resolution regarding a Cash-Out Payment, the United States shall continue to pay Electric Boat for Other Future Response Costs pursuant to the terms set forth in Paragraphs

6(d)–(g).  If the Parties agree to a Cash-Out Payment for any Area, the United States shall

continue to reimburse Electric Boat's Other Future Response Costs for Response Actions for

which a Cash-Out Payment has not been made, pursuant to the terms set forth in Paragraphs

6(d)–(g).  If the Parties agree to a Cash-Out Payment for any Area, Electric Boat shall not seek

to recover any Future Response Costs for that Area through Federal Contracts until it has fully

expended that Cash-Out Payment.  Any such agreement to a Cash-Out Payment for any Area

shall be submitted for Court approval as a modification to this Consent Decree.

> (j)  Electric Boat shall not seek to recover any Future Area 1 Response Costs

or Future Area 6 Response Costs through Federal Contracts until it has fully expended the

Initial Area 1 and Area 6 Payment.

> (k)  Electronic Funds Transfer Information for Electric Boat:

>> Bank:  JPMorgan Chase Bank
>> Routing Transit Number:  071000013
>> Account Type:  Checking
>> Account Number:  5215102

7.  **Prohibition Against Double Recovery**.

> (a)  With respect to payments made or to be made by the United States

pursuant to Paragraph 6 of the Consent Decree to Electric Boat, Electric Boat certifies, subject

to the penalties of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and other applicable law, that

to the best of its knowledge, information and belief, Electric Boat has not and shall not collect

or in the future seek or collect any Double Recovery by or through any means, including Third-

Party Reimbursement, any Federal Contract, or any claim, cause of action, suit, or demand of

any kind whatsoever in law or in equity.

> (b)  Except for the restrictions found in Paragraphs 6(i)–(j), nothing in this

Consent Decree shall prohibit Electric Boat from seeking reimbursement under its Federal

Contracts for Response Costs that have not been paid by the United States pursuant to this Consent Decree, or from asserting such claims as are otherwise prescribed by law, in an appropriate court, relating to such reimbursement under Electric Boat's Federal Contracts.

(c)     Electric Boat is the only entity authorized and responsible for contracting with the federal government for work to be performed and billed by Electric Boat.  Electric Boat is the only entity authorized to submit costs billed under such Federal Contracts.  Electric Boat represents that there is no other entity related to Electric Boat that is authorized to include any Future Response Costs for which Electric Boat receives payment under this Consent Decree as indirect costs in connection with any Federal Contract.

(d)     Electric Boat is expressly prohibited from including any Response Costs for which it receives payment under this Consent Decree as direct or indirect costs in connection with any Federal Contract.

(e)     If Electric Boat becomes aware of or is offered any Double Recovery prohibited under Paragraph 7, as defined in this Consent Decree, Electric Boat shall promptly give notice of the terms of this Consent Decree to the individual, agency, or other entity that is offering or has provided such Double Recovery, and shall simultaneously notify the United States in accordance with Paragraph 23.

(f)     Electric Boat warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to Past Response Costs or Future Response Costs.

(g)     In the event that Electric Boat knowingly made or makes a false statement, as defined in 31 U.S.C. § 3729(b), in connection with any of the warranties or certifications set forth in this Consent Decree, Electric Boat shall be liable to the United States

17

for a civil penalty to be determined pursuant to, and in the amounts specified in, 31 U.S.C. §
3729.

    8.    <u>Covenants Not To Sue.</u>

        (a)    Immediately upon the Effective Date of this Consent Decree, the Parties
simultaneously forever covenant and agree not to assert (by way of the commencement of an
action or in any other fashion) any and all claims, causes of action, suits or demands of any kind
whatsoever, in law or in equity, that they, or their subsidiaries, parents, affiliates, assigns,
consultants, insurers, or any other related entities, may have had, or hereafter have, against each
other relating to Past Response Costs or Future Response Costs, including, but not limited to,
claims under CERCLA Sections 107 and 113.  The Parties agree that such covenant and
agreement does not include any covenant and agreement with respect to (i) any claims or
actions regarding the Site brought by or on behalf of the United States Environmental Protection
Agency or a natural resource trustee, (ii) claims by Parties relating to the enforcement of the
terms of this Consent Decree, or (iiii) claims referenced in Paragraphs 7(b) or 7(g).

        (b)    Except as expressly provided herein, nothing in this Consent Decree shall
constitute or be construed as a waiver, limitation or release of any claims or causes of action by
the United States to enforce any federal laws, regulations, or contracts at or in connection with
the Site or any off-Site area.

    9.    <u>Protection Against Claims.</u>  The United States and Electric Boat acknowledge and
agree, and the Court finds, that the payments to be made by the United States pursuant to
Paragraph 6 of this Consent Decree represent a good faith compromise of disputed claims and
that the compromise represents a fair, reasonable, and equitable resolution for the Matters
Addressed in this Consent Decree.  With regard to any claims, the Parties acknowledge and the

Court finds that this Consent Decree is a judicially-approved settlement pursuant to which the United States has, as of the Effective Date, resolved liability to Electric Boat, and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(1) of CERCLA, or as may be otherwise provided by law, for the Matters Addressed in this Consent Decree.  Any rights the United States may have to obtain contribution or otherwise recover costs or damages from persons not party to this Consent Decree are preserved.

10.     Indemnity.  In consideration for the payments to be made by the United States under Paragraph 6, Electric Boat agrees to indemnify and hold harmless the United States for and from any and all claims, liabilities and costs attributable to Removal Actions or Remedial Actions at the Site, including, but not limited to, claims by any Party, Party's insurer, Rhode Island, or any Indian tribe for cost recovery, subrogation or reimbursement under Sections 106, 107, or 113 of CERCLA or the Rhode Island state law equivalent of such claims.  Electric Boat shall not be liable under this indemnification provision for the United States' attorneys' fees.

11.     Compliance with the Anti-Deficiency Act.  All payment obligations by the United States under this Consent Decree are subject to the availability of appropriated funds applicable for that purpose.  No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341–44 and 1511–19, or any other applicable provision of law.

12.     Notification Regarding Claims.  The United States shall notify Electric Boat in writing, at the address specified in Paragraph 23 below, of any complaint that is filed against and served upon the United States relating to the Site, as soon as practicable.  The United States agrees not to settle any such action without first notifying Electric Boat of the United States'

intent to settle any such action and providing Electric Boat with a reasonable opportunity to discuss any proposed settlement with the United States.

13. Effect of Settlement/Entry of Judgment.

(a) This Consent Decree was negotiated and executed by Electric Boat and the United States in good faith and at arm's length and is a fair and equitable compromise of claims that were vigorously contested. This Consent Decree and the Parties' performance of any obligations thereunder shall not constitute or be construed as an admission of liability by any Party. Nor shall they constitute or be construed as an admission or denial of any factual allegation or legal assertion set forth in the Complaint or elsewhere, or as an admission of violation of any law, rule, regulation, or policy by any Party.

(b) The Parties agree to join in and support, as may be appropriate, such legal proceedings as may be necessary to secure the Court's approval and entry of this Consent Decree. The Parties also agree to bear their own attorneys' fees and costs in connection with this case and any legal proceedings associated with the approval and entry of this Consent Decree.

(c) Upon the Effective Date, this Consent Decree shall constitute a final judgment with respect to the claims resolved by this Consent Decree. Upon the Effective Date, all claims against any Party by another Party in this case, whether alleged in the Complaint or as a counterclaim, shall be dismissed with prejudice.

14. Retention of Jurisdiction. This Court shall retain jurisdiction both over the subject matter of this Consent Decree and over the Parties for the duration of the performance of the terms and provisions of the Consent Decree, for the purpose of enabling any Party to apply to the Court, consistent with this Consent Decree, for such further order, direction, and relief as

may be necessary or appropriate to construe this Consent Decree, to effectuate or enforce compliance with its terms, or to resolve any disputes arising under this Consent Decree.

15.    <u>Not To Be Used As Evidence</u>.  This Consent Decree shall not be admissible as evidence in any proceeding other than an action brought by a Party to enforce this Consent Decree, or any proceeding where the United States seeks to establish that it is entitled to contribution protection.

16.    <u>Disputes</u>.  Each Party agrees to provide the other Party notice no fewer than thirty (30) calendar Days prior to commencing any proceedings in any court or tribunal regarding any dispute, claim, or difference that arises in connection with this Consent Decree, or the breach or invalidity thereof.  During the thirty (30) Day notice period, the Parties agree to attempt in good faith to resolve the issue.  If the Parties do not reach resolution of the issue, any dispute concerning this Consent Decree must be resolved exclusively in the Court.  To the maximum extent permitted by law, the Parties agree to personal jurisdiction, subject matter jurisdiction, and venue in the Court for purposes of resolving disputes under this section.

17.    <u>Governing Law</u>.  This Consent Decree shall be governed by and construed in accordance with United States federal law.

18.    <u>Headings</u>.  Any paragraph headings or section titles to this Consent Decree are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any paragraph or provision of this Consent Decree.

19.    <u>Original Counterparts</u>.  This Consent Decree may be executed in any number of original counterparts, each of which shall be deemed to constitute one agreement.  The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

20.     <u>Entire Agreement</u>.  This Consent Decree, including any appendices thereto, constitutes the entire Consent Decree between Electric Boat and the United States with respect to the subject matter addressed herein.  All prior drafts or writings and all prior contracts, agreements, understandings, discussions or negotiations, oral or written, between Electric Boat and the United States relating to the subject matter hereof are specifically and fully superseded by this Consent Decree and may not be used to vary or contest the terms of this Consent Decree. There are no warranties or representations, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein.

21.     <u>Modification</u>.  This Consent Decree shall not be modified or amended except by mutual written consent of the Parties, or by Court order.

22.     <u>Successors and Assigns</u>.  This Consent Decree shall be binding on any successors and assigns of Electric Boat.  Any change of ownership, corporate or other legal status of Electric Boat shall in no way alter the obligations of Electric Boat under this Consent Decree. Electric Boat shall provide written notice to the United States, at the address specified in Paragraph 23, within thirty (30) Days after the effective date of any material change in ownership, corporate, or other legal status.

23.     <u>Notices</u>.  Except as specifically provided elsewhere herein, all notices and written communications pertaining to this Consent Decree shall be sent to the Parties at the addresses specified in this Paragraph.

(a)     For the United States:

Chief, Environmental Defense Section
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611

(b)   For Electric Boat:

Electric Boat Corporation
Attn: Vice President and General Counsel
75 Eastern Point Road
Groton, CT 06340-4989

24.   <u>Records Retention and Audits</u>.

(a)   Electric Boat agrees that it shall retain all records related to its performance of Response Actions to address Contamination at or from the Site for a period of no less than five calendar years after the date of the United States' payment made for such costs pursuant to this Consent Decree.   Nothing in this subparagraph shall be deemed to affect or alter Electric Boat's contractual document retention requirements that require retention of documents for a longer period.

(i)   Electric Boat shall make available to the United States any of these records promptly upon request at any time prior to their actual destruction, for any and all purposes, including but not limited to the enforcement of this Consent Decree, tax and other financial laws, and audit of costs relating to Federal Contracts.   Electric Boat preserves its ability to assert that certain cost information is confidential business information and should be treated as such by the United States.

(ii)   Electric Boat may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law.   If Electric Boat asserts such a privilege, it shall provide the United States with the following: (1) the title of the record; (2) the date of the record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the record; (4) the name and title of each addressee and recipient; (5) a description of the subject of the record; and (6) the privilege asserted.   If a claim of privilege applies only to a portion of a record, the record shall be provided to the United States in redacted

23

form to mask the privileged information only.  Electric Boat shall retain all records that it claims

to be privileged until the United States has had a reasonable opportunity to dispute the privilege

claim and any such dispute has been resolved in Electric Boat's favor.  However, no records

created or generated pursuant to the requirements of this Consent Decree shall be withheld on the

grounds that they are privileged or confidential.

       (b)    Except as otherwise provided in this Consent Decree, after entry of the

Consent Decree as a final judgment, the obligations of the United States and Electric Boat

(arising from the common law, the Federal Rules of Civil Procedure, or any pre-trial order

entered in the above-captioned matter, including the Stipulation and Order Regarding Discovery

Procedures (Dkt. 17)) related to the preservation of evidence that may be relevant to any

anticipated or pending civil claims that are the subject of the covenants not to sue set forth in

Paragraph 8 of the Consent Decree, shall be terminated.  Entry of this Consent Decree does not

affect any preservation obligations arising from the Federal Records Act or claims other than

those addressed by the covenants not to sue set forth in Paragraph 8 of this Consent Decree.

       (c)    In addition to any other evidence or potentially relevant things,

documents, or electronically stored information that may be disposed of pursuant to

Subparagraph 24(b), after entry of the Consent Decree as a final judgment, the United States

Department of the Navy need not preserve any disaster recovery backup tapes relating to the

computer network in use at SUPSHIP Groton before SUPSHIP Groton transitioned to the Navy

Marine Corps Intranet in 2017.

    25.    <u>Representative Authority</u>.

       (a)    The United States is executing this Consent Decree on behalf of the

federal government, including all of its departments, agencies and instrumentalities, which

includes, but is not limited to, the Department of Defense, the Department of the Navy, and the

Defense Contract Audit Agency.

(b)     Each signatory to this Consent Decree hereby certifies that he or she has

been duly authorized to enter into this Consent Decree by the Party on whose behalf the

signatory indicates he or she is signing.

IN WITNESS WHEREOF, the Parties enter into this Consent Decree.

*For Electric Boat Corporation*:

Date: _____

Matthew Luxton
Vice President and General Counsel
Electric Boat Corporation
75 Eastern Point Road
Groton, CT 06340-4989
(860) 433-2700

*For The United States of America*:

Jeffrey H. Wood
Acting Assistant Attorney General
Environment and Natural Resources Div.

Date: 4/20/18

By: _____
Joshua M. Levin
Benjamin R. Carlisle
U.S. Department of Justice
Environmental and Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-4198
(202) 514-9771

25

By entering this Consent Decree, the Court finds that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS ____ DAY OF _____, 20__.

_____
United States District Judge